OPINION OF THE COURT

DARELL R. MATLOCK, JR., Chief Justice.

Jurisdiction

This matter is properly before this Court pursuant to Article VIII of the Cherokee Constitution of 1999 and Legislative Act 15-04 Section XVII.

The Anatomy of the Litigation

1. This Court on October 5, 2006 by Administrative Order numbered SC-AD-06-06 pursuant to Article XV, Section 3 of the Cherokee Constitution of 1999 and Section XV of Legislative Act 15-04 approved the Election Commission’s certification of the numerical sufficiency of signatures on the Initiative Petition which is the subject of these proceedings, and, ordered the Election Commission to cause the publication of the filing of the Initiative Petition and determination of the apparent sufficiency of the required number of signatures and further notice the citizens of their rights to protest the Initiative Petition.
2. In Response to the Publication of Notice the Petitioner/Protestant, Vicki Dee Baker, timely filed her protest to the Initiative Petition “Proposing an Amendment to Article IV, Section 1 of the Cherokee Nation Constitution of 1999 and Article III, Section 1 of The Cherokee Nation Constitution of 1975 on November 1, 2006 setting forth her elements of protest against the Initiative Petition”. The four (4) elements of protest were:
(1). Fraud,
(2). Insufficiency of Signatures,
*41 (3) Petition Wording is Vague and Misleading, and,
(4) Petition Violates the Constitution.
3. On November 3, 2006 the Court bifurcated the proceedings and ordered the Cherokee Nation Election Commission and employees to appear before the Court on November 10, 2006 to present testimony concerning the receipt and processing of the Initiative Petition which is the subject of these proceedings.
4. On November to, 2006 the Court proceeded to hear testimony from members of the Cherokee Nation Election Commission and employees of the Commission in the presence of the parties and further allowed the parties to pose any questions they had of the Commissioners and/or the employees. The Court received the Volumes of the Initiative Petition the Election Commission received from the Proponents, and, received notes of the employees concerning the processing and counting of the signatures contained on the packets of the Initiative Petition, into the evidentiary record.
5. The Court after examining the Volumes of the Initiative Petition and the language of the Initiative Petition made a summary finding as a matter of law that the language of the Initiative Petition was constitutionally sufficient.
6. The Court also found as a matter of law that there is a presumption the signers read the petition and that this Court will not interfere with the action of electors under the theory that some may have been verbally deceived.
7. The Cherokee Nation Election Commission by their attorney, James Cosby, on November 22, 2006, filed a Motion for Declaratory Judgment to determine whether or not the Principal Chief has the authority to call a Special Election concerning Initiative Petitions.
8. The Respondents/Proponents filed a Motion to Quash Subpoenas alleging that in part the Petitioner/Protestant’s Lay Advocate violated the Cherokee Nation Supreme Court Rules and Federal Rule of Procedure 45 in issuing and serving subpoenas.
9. On November 24, 2006 the Court received evidence concerning the merits of the Petitioner/Protestant’s protests against the Initiative Petition.

Findings

A. The Court finds that Petitioner’s Lay Advocate confesses to issuing subpoenas under and by his own name and failed to pay the required fees and mileage to the subpoenaed persons, and that the subpoenas were ordered quashed.
B. The Court further finds that the Principal Chief of the Cherokee Nation has the authority to call a “Special Election” concerning Initiative Petitions pursuant to Article XV, Section 4 of the Cherokee Nation Constitution of 1999 and Legislative Act 15-04 Section VII.
C. The Court further finds that the evidence presented by the Petitioner/Protestant considered in the most favorable light to the Petitioner fails to overcome the burden of proof required to prove the Initiative Petition insufficient and the petition of protest is therefore denied.

IHscMssion

A. The Petitioner/Protestant’s Lay Advocate failed to follow the procedure in issuing and serving subpoenas as required under Rules 81 and 103 of the Cherokee Nation Supreme Court Rules and Rule 45 of the Federal Rules of Civil Procedure which require that the witnesses required to appear before the Cherokee Nation Supreme Court be paid the same fees and mileage that are paid wit *42 nesses in the Courts of the United States and that the subpoenas be issued by the Clerk of the Supreme Court.
B. Article XV Section 4 of the Cherokee Nation Constitution of 1999 sets forth the following language concerning the calling of a Special Election:
“. All elections on measures referred to the People of the Cherokee Nation shall be had at the next regular general election except when the Council or the Principal Chief shall order a special election for the express purpose of making such reference. Any measure referred to the People by the initiative .....” (emphasis added)
Legislative Act 15-04 Section VII sets forth:
“Whenever any measure shall be initiated by the People in the manner provided by law ., same shall be submitted to the People for their approval or rejection at the next regular or special election as provided at Article XV, Section 4 of the Cherokee Nation Constitution” (emphasis added)
The word “measure” is defined by Black’s Law Dictionary 4th Edition, 1951 at page US 2 as,
“The Rule by which anything is adjusted or proportioned.”
It is obvious that the word measure as used in Article XV, Section 4 of the Cherokee Nation Constitution of 1999 and Legislative Act 15-04, Section VII is referring to proposed amendments to the Cherokee Nation Constitution by the initiative.
C. This Supreme Court in formulating the rules to govern;proceedings to apply to this challenge of an Initiative Petition gave great deference to the strength of the direction of the Cherokee People in Article XV, Section 1 of the Cherokee Nation Constitution of 1999:
“... the People of the Cherokee Nation reserve to themselves the power to propose laws and amendments to this Constitution and to enact or reject the same at the polls independent of Council ...” (emphasis added)
The Court further looked to rulings in other sovereign jurisdictions including the State of Oklahoma to examine the safeguards used by those Courts to protect one of the most basic rights of self government which is the action by Initiative Petition. The jurisdictions varied in their approach and this Court, while considering each approach, used the following procedure to insure protection of each individual's right of initiative:
The Court made rulings of law that the form of Initiative Petition met the constitutional requirements and that there must be a presumption that the signers of the Initiative Petition read the Initiative Petition and an action for verbal fraud would not defeat an Initiative Petition.
This Court has considered the “rule of substantial compliance” formulated by the Oklahoma Courts in the proceedings In Re: Referendum Petition for a Referendum Vote on Legislative Act 28-99, JAT-OJ-06, and, while not necessary adopting the rule in total, it would appear that part of the rule, which forgives technical and clerical defects as long as the critical requirement of notice to the electorate is accomplished, should be adopted by this Court.
The most perplexing issue that was joined by the evidence received by the Court was the burden of proof which the Petitioner/Protestant must overcome to defeat the Initiative Petition. In order to protect each qualified electorate’s right to participate in the initiative, the court applied the following presumptions and burdens of proof which must be overcome by the Petitioner/Protestant.
*43 1. The certificate of each packet which composed a part of the total Initiative Petition is prima facie correct and the jurat imports a verity and presumption that must be rebutted by competent evidence.
2. If a certificate of a circulator is impeached the probative value of that certificate is destroyed and none of the signatures appearing on that page of the petition will be counted unless affirmatively proven to be genuine.
3. The constitutional rights of qualified electors who sign the Initiative Petition must be protected by this Court tempered only by the safeguard of the integrity of the process. Therefore the Petitioner/Protestant must present sufficient evidence as to each certificate to overcome the presumptions set forth hereinbefore even though one or more certificates of a circulator has been impeached. The Court is charged with determining the validity of the process in these proceedings and not to punish a circulator’s indiscretions by disqualifying all his packets. If the Court were to invalidate signatures on certificates that the Petitioner/Protestant fails to impeach with competent sufficient evidence then the Court would be violating the constitutional guarantees of those qualified electors who happen to be on such certificates. The proper conduct of the Court is to refer the persons suspected of violating Legislative Act 15-04, Section VI to the Department of Justice for investigation and possible prosecution and such referrals will be made.
The Petitioner/Protestant presented John Summerfield as a witness who along with his wife signed a signature page of a packet (identified as Petitioner’s exhibit 2) circulated by a person who was different than the named circulator, Darren Buzzard, on the packet .and the named circulator was the person who executed the verification certificate. There were nineteen (19) qualified signatures on this particular packet and the only signatures affirmatively proven were the signatures of John Summerfield and his wife Josephine Sum-merfield. Therefore eighteen (18) signatures of the packet must be disqualified.
The Petitioner then presented testimony from Carol Wyatt who testified she took a packet (identified as Petitioner’s exhibit 3), being circulated by Dwayne A. Barrett, to her parents to obtain their signatures and they did sign the signature page. Dwayne A. Barrett executed the verification certificate. There were nine (9) qualified signatures on this signature page and the only signatures affirmatively proven were the signatures of Carol Wyatt’s parents. Therefore nine (9) signatures of this packet must be disqualified.
The Petitioner then presented sufficient evidence to disqualify the two (2) qualified signatures on the packet identified as Petitioner’s exhibit 4.
4.The Petitioner presented Marylyn Vann’s testimony wherein she testified she discovered thirteen (13) signatures were not on the voter’s list received by her from the Election Commission. The Court feels that her testimony was less than convincing but will disqualify the thirteen (13) signatures on Petitioner’s exhibit 5 for purposes of considering a demurrer to the Petitioner/Protestant’s evidence. The total number of signatures disqualified by the Petitioner/Protestant’s witnesses and exhibits was forty-two (42). The Cherokee Nation Election Commission verified that there were Three Thousand twenty-nine (3,029) signatures collected, and, certified Two thousand two hundred seventeen (2,217) of the signatures. The Cherokee Nation further certified that there were Thirteen thousand mine hundred fourteen (13,914) votes east in the last general election.
*44 In order for the proposed amendment to the Constitution to be presented to the Cherokee People for approval or disapproval the valid signatures must total at least fifteen percent (15%) of the total number of votes cast in the last general election. Article XV; Section S of the Cherokee Nation Constitution of 1999; Legislative Act 15-04. Section XV,
The Court determines that fifteen percent (15%) of Thirteen thousand nine hundred seventeen (13,917). is Two thousand eighty-seven: (2,087). The figure of Two thousand eighty-seven (2,087) valid signatures is the number required to send the proposed constitutional amendment to a vote of the Cherokee People.
The Court subtracted the Forty-two signatures from the number of Two thousand two hundred seventeen (2,217) signatures verified by the Cherokee Nation Election Commission for balance of Two thousand one hundred seventy-five (2,175) qualifying signatures which are more than the necessary figure of Two thousand eighty-seven (2,087) signatures necessary to submit the proposed constitution amendment to the Cherokee People for consideration.
IT IS THEREFORE ORDERED by the Court that the Petition of Protest is denied.
JAMES G. WILCOXEN, KYLE B. HASKINS, concurring.
STACY L. LEEDS, Justice, Dissenting.